# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DENISE LEE WASHINGTON, | Case No. 1:17-cv-773 |
| Plaintiff, | |
| v. | Bowman, M.J. |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendants. | |

## MEMORANDUM OF OPINION AND DECISION

Plaintiff Denise Lee Washington filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled. Proceeding through counsel, Plaintiff presents three claims of error, all of which the Defendant disputes. The parties have consented to the jurisdiction of the Magistrate Judge for disposition of this matter. (Doc. 7). As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is herein **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

Plaintiff filed an application for SSI in December 2009, alleging disability beginning November 7, 2007 due to a combination of physical and mental impairments (Tr. 67). That claim was denied initially, on reconsideration, and in December 2011 after a hearing before Administrative Law Judge ("ALJ") Kristen King. (Tr. 67-81). Plaintiff did not appeal that decision. Plaintiff filed a new SSI application in May 2014, this time alleging disability beginning February 7, 2013 because of seizures, headaches, high cholesterol, high blood pressure, and a facial cyst. (Tr. 170, 186). After Plaintiff's claims

were denied initially and upon reconsideration, she requested a hearing *de novo* before ALJ Peter Jamison. Plaintiff appeared and testified at a hearing on January 29, 2015. The ALJ also heard testimony from Robert Breslin, an impartial vocational expert. On October 25, 2016, the ALJ denied Plaintiff's application in a written decision. (Tr. 18-28). Plaintiff now seeks judicial review of the denial of her applications for benefits.

Plaintiff was born in 1971 and was 43 years old at the time her application was filed. She testified that she completed the 5th grade and attempted to get her GED but was not successful. (Tr. 41). She has no past relevant work and alleges disability primarily based on seizures, headaches, and high blood pressure.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "epilepsy, essential hypertension, obesity, and borderline intellectual functioning." (Tr. 20). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work subject to the following limitations:

> She must avoid all exposure to unprotected heights, moving mechanical parts, and extreme heat. She is limited to performing simple, routine, and repetitive tasks but not a production rate pace (e.g. assembly line work). She is limited to simple work-related decisions. She can occasionally respond appropriately to supervisors, coworkers, and the public with no transactional interaction such as sales or negotiations. She is limited to tolerating few changes in a routine work setting defined as no more than ordinary and routine changes in work setting and duties. She can never engage in commercial driving.

(Tr. 23). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC,

2

the ALJ concluded that while Plaintiff had no past relevant work, she could perform a significant number of unskilled jobs in the regional and national economy, including janitor/industrial cleaner, dishwasher/kitchen helper, and packager. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to properly credit Plaintiff's working memory and processing speed tests; (2) failing to find that Plaintiff met or equaled Listing 12.05(c); and (3) improperly evaluating Plaintiff's credibility. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

**II.     Analysis**

**A.     Judicial Standard of Review**

To be eligible for SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. § 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.2006); 20 C.F.R. § 416.920. However, a plaintiff bears the ultimate burden to prove by

sufficient evidence that he or she is entitled to disability or supplemental security benefits. *See* 20 C.F.R. § 404.1512(a).

B. **The ALJ's Decision is supported by Substantial Evidence**

At the outset, the Court notes that because Plaintiff did not appeal the December 2011 hearing decision by ALJ King, ALJ Jamison's October 2016 decision was controlled by *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902, at 2-3. In *Drummond,* the Sixth Circuit determined that a subsequent ALJ is bound by the findings of a previous ALJ, absent evidence of changed circumstances in the claimant's condition. 126 F.3d at 840; AR 98-4(6). Here, because ALJ King concluded in December 2011 that Plaintiff was not disabled, Plaintiff must demonstrate that her condition has significantly deteriorated, or else collateral estoppel applies to each of the ALJ's determinations that led to a finding of nondisability. *Fuson v. Comm'r of Soc. Sec.*, No. 99-5666, 2000 WL 1140744, at *1 (6th Cir. Aug. 8, 2000) (In order to be awarded benefits for condition since last ALJ determination, claimant had to show that his condition had so worsened in comparison to his condition at that time, that he is unable to perform substantial gainful activity).

*1. Listing 12.05C*

Plaintiff asserts that the ALJ failed to provide sufficient reasons for the determination that she did not meet or equal Listing 12.05C. In this regard, Plaintiff's appeal focuses on Step 3 of the ALJ's analysis; specifically, the ALJ's conclusion that Plaintiff does not meet or equal Listing 12.05C. Upon careful review and for the reasons that follow, the undersigned finds that the ALJ's decision is substantially supported.

Listing 12.05 provides as follows:

> 12.05 Mental Retardation: mental retardation refers to significantly subaverage general intellectual functioning with adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence or pace; or
>   4. Repeated episodes of decompensation, each of extended duration

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet the requirements of a listed impairment, a plaintiff must satisfy all of the elements of that impairment. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). Accordingly, under Listing 12.05(C), a plaintiff must first demonstrate that her impairment satisfies the diagnostic description for mental retardation within 12.05, in addition to meeting the criteria of subsection C of 12.05. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Thus, a claimant will meet the Listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria...." *Carmack v. Barnhart*,

No. 04-6152147 Fed.Appx. 557, *560 (6th Cir. 2005) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (emphasis added)).

The diagnostic description of mental retardation is as follows:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptative functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

"Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM—IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r Soc. Sec. Admin.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007) (*citing Heller v. Doe by Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM—IV, p. 49.B

In the present case, at step-three of the sequential analysis, the ALJ determined that Plaintiff's impairments do not meet or equal the requirements of any Listing. (Tr.21-23). Specifically, with respect to Listing 12.05C, the ALJ determined that "the requirements in paragraph C . . . are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other

7

mental impairments imposing an additional and significant work-related limitation." (Tr. 22).

Here, Plaintiff argues that she meets the requires of listing 12.05 because the ALJ determined that her IQ scores of 69-70 were valid.[1] (Doc. 9). Plaintiff argues that her obesity, headaches and epilepsy would result in additional function limitations that meet the Listing requirements. Plaintiff further argues that the record clearly shows that she suffers from deficits in adaptive functioning because she only completed 5th grade in special education classes. Plaintiff's contentions lack merit.

As noted by the Commissioner, the definition of intellectual disability is not based solely on IQ scores; indeed, a claimant can have a valid verbal, performance, or full-scale IQ score below 70 and still not meet this definition. *See, e.g., Cooper v. Comm'r of Soc. Sec.,* 217 F. App'x 450, 452 (6th Cir. 2007); *Thomas v. Comm'r of Soc. Sec.*, No. 08-1365, 2010 WL 1254788, *11 (N.D. Ohio Mar. 25, 2010) ("[N]umerous Sixth Circuit decisions have upheld the ALJ's finding that the introductory paragraph of Listing 12.05 is not satisfied in spite of an IQ score below 71."). Further, when a psychologist considers a claimant's mental limitations and assigns a diagnosis of borderline intellectual functioning, the diagnosis (and not diagnosing intellectual disability) strongly suggests that the claimant does not meet the Listing's capsule definition. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) ("Although an MMR diagnosis is not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination."); *see also Catterson v. Astrue,* No. 10-112, 2011

---

[1] Plaintiff was administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) and obtained a Verbal Comprehension Index of 70, a Perceptual Reasoning Index of 75, a Working Memory Index of 74, a Processing Speed Index of 76, and a Full Scale IQ score of 69.

WL 4402781, *1 (S.D. Ohio Sept. 21, 2011) (because "mental retardation and borderline intellectual functioning are mutually exclusive diagnoses," a diagnosis of "borderline intellectual functioning rather than mental retardation" is substantial evidence that the claimant did not meet the capsule definition). "Accordingly, while a diagnosis of mental retardation is not a requirement of the introductory paragraph of Listing 12.05(C)," an ALJ may "give substantial weight to the fact" that a claimant was diagnosed "with borderline intellectual functioning, not mental retardation, despite" IQ scores supporting the latter. *Thomas*, 2010 WL 1254788, *12.

Here, the examining and reviewing psychologists all determined that Plaintiff's functioning was more consistent with borderline intellectual functioning than intellectual disability. (Tr. 87, 239, 241). *See Peterson*, 552 F. App'x at 539 (ALJ may draw negative inference from decision not to diagnose MMR); *Catterson*, 2011 WL 4402781, *1 (same); see also *Jones v. Comm'r of Soc. Sec.*, 2012 WL 946997 at *8 (N.D. Ohio Mar. 20, 2012) (MJ Baughman) (an ALJ "is permitted, even encouraged, to rely on a medical expert for a professional medical analysis of whether . . . a claimant meets or equals a listing."). Further, the state agency reviewers expressly found that Plaintiff did not meet or equal any listing. (Tr. 88-90, 92, 94, 100-03, 105-06).

The Commissioner further argues that substantial evidence also demonstrates that Plaintiff's daily activities contradicted "deficits in adaptive functioning" required by the capsule definition. Specifically, Plaintiff can maintain personal care; perform chores including light cleaning; grocery shop with her case manager; prepare simple meals; and use public transportation. (Tr. 23, 47-48, 52-53, 237). Plaintiff goes on walks; lives with a friend; enjoys playing with her cat, watching television, and listening to music;

9

and attends church every week. (Tr. 22, 24, 47-48, 50, 52-53). Additionally, during her consultative psychological examination, Plaintiff interacted adequately with the examiner, and reported good relationships with her family. (Tr. 22, 237, 240). Plaintiff's activities of daily living and social functioning further support the ALJ's determination that she does not satisfy the diagnostic criteria of Listing 12.05C. See *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (Claimant does not show deficits in adaptive functioning where she cooks, does laundry and shops, manages her finances, and takes public transportation); *Lewis v. Colvin*, 2014 WL 2619592, at *7 (E.D. Ky. 2014) (unpublished) (Plaintiff does not have deficits in adaptive functioning where she can read, write, and communicate effectively; follow instructions and answer questions; use the computer; do chores; take public transportation; care for her personal needs; interact with family and friends; and have a boyfriend).

In order to meet the requirements of Listing 12.05C, medically determinable impairments must be established by objective medical evidence. 20 C.F.R. § 416.921; 20 C.F.R. § 416.923 (medically severe combination of impairments). ALJ King's prior finding that Plaintiff did not satisfy 12.05C, while not dispositive, is still informative. A prior denial on an SSI application is not preclusive. "[The] second application starts the process anew and potentially permits the applicant to obtain benefits through it for this new period of time. In each event, the question before the ALJ is whether a preponderance of the evidence supports a decision to award benefits under the five-step inquiry, 20 C.F.R. § 404.953(a), and on review whether substantial evidence supports that finding, 42 U.S.C. § 405(g)." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018) (remanding to Social Security Administration to reconsider plaintiff's

second application for benefits). In this case, the ALJ reviewing the second application showed that he did not merely rely upon the earlier denial. Rather, he undertook an evaluation of the objective medical evidence presented and claimant's allegations of limitation. The ALJ gave some/partial weight to findings that Plaintiff had borderline intellectual functioning, that she ambulated with normal gait and could perform "a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects" and that she could perform "simple, routine, repetitive tasks, and that while she has seizures and headaches," compliance with medical treatment reduces such impairments. *Accord Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984) (medical evidence reflecting impairments were controlled with medication). ALJ Jamison's determination substantially aligns with the prior determination that the Plaintiff is not disabled but it does not mimic the earlier opinion. ALJ Jamison's decision read as a whole indicates that the ALJ considered the appropriate factors in concluding that Washington did not meet the listing requirements.

The ALJ's decision included an extensive discussion of the medical evidence concerning Plaintiff's mental impairments, and indicates that the ALJ expressly considered the applicability of Listing 12.05(C) (Tr. 21-23). Courts have been reluctant to impose a strict articulation standard on ALJs at step three. *See Price v. Heckler,* 767 F.2d 281, 284 (6th Cir.1985) (minimal articulation required at step three). In sum, substantial evidence supports the ALJ's step three finding, which was also adequately articulated.

*2. Credibility*

Plaintiff also claims that the ALJ's credibility finding is not substantially supported. In this regard, Plaintiff asserts that the ALJ's credibility assessment failed to consider Plaintiff's complaints of disabling seizures, depression and or obesity were supported by the record.

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p.

Here, the ALJ properly set forth several specific reasons in support of his finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 18). See 20 C.F.R. § 416.929 (c)(4) (in evaluating the extent to which symptoms, such as pain, limit a claimant's ability to perform work activities, the ALJ will compare a claimant's reported symptoms with the objective medical evidence and other evidence to see if there are conflicts or inconsistencies between the two). As detailed by the Commissioner, the ALJ reasonably determined that Plaintiff's complaints of disability

were unsupported by the objective evidence. See 20 C.F.R. § 416.929(c)(2) (considering objective evidence in weighing claimant's statements regarding the intensity and persistence of symptoms). Regarding Plaintiff's mental limitations, the ALJ acknowledged her complaints of bad memory, difficulty reading, and an inability to concentrate, but noted that, at her consultative examination her thought process and mental content were within normal limits. (Tr. 24, 240). Further, Dr. Johnson diagnosed borderline intellectual functioning, and assigned a Global Assessment of Functioning (GAF) score of 60, showing only moderate (and nearly mild) impairments (Tr. 238-39, 241). Dr. Johnson opined that Plaintiff could apply instructions requiring borderline intellectual functioning; could concentrate on questions and tasks; would be unlikely to show a pattern of time away from work for mental health; would respond appropriately to work stressors; and would respond appropriately to coworkers. (Tr. 242).

The ALJ also noted that Plaintiff's physical examinations have been largely unremarkable; and on consultative examination, Plaintiff ambulated with a normal gait, was comfortable in both sitting and supine positions, had normal range of motion and neurological findings, had no difficulty reaching, grasping, and handling objects, or visual or communication limitations. (Tr. 25, 249-50). Dr. Fritzhand found that, despite Plaintiff's combined physical impairments, she could perform moderate sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects (Tr. 250).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required factors in determining plaintiff's credibility. See 20 C.F.R. § 416.929(c). In light of the

ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. HHS*, 667 F.2d 524, 538 (6th Cir. 1981). *See also Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir.2007); *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

    *3. Working Memory and Processing Speed Tests – VE testimony*

Plaintiff argues that the RFC assessment was improper because she is only capable of performing "sheltered work," and cannot sustain full-time work. (Pl. Br. 3-4). As noted above, Plaintiff was administered WAIS-IV IQ testing and obtained a Verbal Comprehension Index of 70, a Perceptual Reasoning Index of 75, a Working Memory Index of 74, a Processing Speed Index of 76, and a Full Scale IQ score of 69. As such, Plaintiff argues that her working memory and processing speed scores, history of special education, leaving school after the fifth grade, and limited work history demonstrate that she is not capable of sustaining work on a regular and continuing basis, as required by SSR 96-8p, 1996 WL 374184 (1996) (Pl Br. 3-4). Plaintiff also cites to "vocational expert testimony" arguing that her working memory and processing speed scores would affect her production and therefore her functional capacity is more restricted than determined by the ALJ (Pl. Br. 4). However, as noted by the Commissioner, the VE testified that he is not qualified to say to what degree Plaintiff's working memory and processing speed scores would affect her production, and instead testified only that Plaintiff's scores seemed to be "below average" or "borderline." (Tr. 61. This finding is consistent with those reached by Dr. Johnson and the ALJ. Namely,

that Plaintiff's impairments result in borderline intellectual functioning rather than mental retardation.

An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir.2010).

In this case, to the extent Plaintiff argues that her functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. As noted above, the ALJ properly determined that Plaintiff's impairments result in borderline intellectual functioning. Notably, Dr. Johnson opined that Plaintiff could apply instructions requiring borderline intellectual functioning; could concentrate on questions and tasks; would be unlikely to show a pattern of time away from work for mental health; would respond appropriately to work stressors; and would respond appropriately to coworkers (Tr. 242).

The ALJ posed a complete hypothetical question to the VE–asking him to consider an individual with Plaintiff's age, education, work experience, and RFC–and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994) (where hypothetical accurately

described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence).

III. Conclusion

For the reasons explained herein, **IT IS HEREIN ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case is **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge